■ In the Matter of LUCILLE M. McKNIGHT, Appellant, v DORMITORY AUTHORITY OF THE STATE OF NEW YORK et al., Respondents. [699 NYS2d 524] —Graffeo, J. Appeal from a judgment of the Supreme Court (Hughes, J.), entered September 18, 1998 in Albany County, which dismissed petitioner's application, in a proceeding pursuant to CPLR article 78, to review a determination of respondent Dormitory Authority of the State of New York, inter alia, terminating petitioner's employment.

Petitioner began working for respondent Dormitory Authority of the State of New York in 1993 as a Field Representative I. It is undisputed that in this job title, petitioner was subject to the time and leave provisions of the collective bargaining agreement between the Authority and the Civil Service Employees Association (hereinafter CSEA), but was not afforded the disciplinary or termination protections provided in the contract.* On October 24, 1996, petitioner began a paid leave of absence allegedly due to work-related stress. She exhausted her paid leave accruals by December 2, 1996 and thereafter her leave of absence was unpaid. Reasoning that petitioner had abandoned her position, the Authority terminated her on January 28, 1997 for failure to present medical documentation indicating that she could not perform her job duties due to physical impairments.

Petitioner commenced this CPLR article 78 proceeding seeking reinstatement and payment of sick leave at half pay for the period of time that she was on leave without pay. Initially, the Authority's motion to dismiss was granted with respect to one cause of action. Supreme Court also directed the Authority to serve and file an answer, after which the court dismissed petitioner's three remaining claims.

Petitioner appeals, initially contending that her termination was not rationally based because she did not manifest an intent

---

* Article 24 of the CSEA contract excludes Field Representatives I from its disciplinary protections but such employees are subject to other provisions of the contract, including time and leave policies.

to abandon her job. Because the chronology of communications between petitioner and the Authority underlies each party's allegations, we need to review the various documents submitted to Supreme Court. Petitioner's paid leave of absence based on alleged work-related stress commenced October 24, 1996 and shortly thereafter she was informed that appropriate medical documentation in support of her leave of absence was required. In response, petitioner's physician sent the Authority a letter on November 7, 1996 stating that petitioner was under his care "for essential hypertension, allergic rhinitis and stress reaction" and that he hoped that rest and psychotherapy would enable her to return to work by November 15, 1996.

Approximately two weeks after petitioner depleted her accrued paid leave in early December 1996, the Authority requested an update from the physician regarding her condition. In early January 1997, it received correspondence from the physician indicating that petitioner was under the care of a psychologist who was in a better position to comment on her ability to return to work. The Authority immediately informed petitioner that her physician's letter was inadequate and that it expected petitioner to return to work no later than January 13, 1997 or her failure to report would constitute abandonment. Petitioner did not return to work on January 13, 1997; instead her psychologist sent a letter indicating that petitioner was under treatment for a "stress reaction" and that she could not estimate when petitioner could return to work.

By letter dated January 15, 1997, petitioner was again told that such correspondence was inadequate and that she must either return to work or produce medical documentation verifying that she suffered from a physical impairment rendering her unable to perform her employment duties. The Authority also stated that it was contemplating an evaluation of her condition by an independent physician. In its final correspondence dated January 28, 1997, the Authority notified petitioner that her failure to provide a satisfactory medical explanation for her continued absence had resulted in a determination that she had abandoned her position.

Based on a review of the record, we find that petitioner was consistently advised by her employer that if she failed to submit adequate medical documentation, her position would be deemed abandoned after her leave credits were depleted if she did not return to work (*see generally*, *Matter of West v Board of Trustees*, 89 AD2d 796; *Matter of Thomas v Board of Educ.*, 58 AD2d 584). The December 23, 1996 letter from petitioner's physician which referred the Authority to petitioner's psycholo-

gist for an assessment of her ability to return to work did not constitute a sufficient medical opinion as required by the collective bargaining agreement and the follow-up correspondence from the psychologist failed to set forth a specific diagnosis related to petitioner's inability to perform any of her job duties.

Despite the Authority's representation in mid-January 1997 that it was considering the scheduling of an independent medical examination of petitioner, the record does not reveal that the employer was required to offer such an accommodation under the terms of the collective bargaining agreement. In any event, petitioner failed to provide the necessary medical documentation justifying her complete incapacity and did not communicate any intention to return to work by January 28, 1999. We therefore conclude that Supreme Court's dismissal of the petition was not arbitrary or capricious due to the vague nature of medical documentation submitted on petitioner's behalf (see generally, Matter of Pell v Board of Educ., 34 NY2d 222, 231).

Next, petitioner's allegation that she was entitled to collect sick leave at half pay during her unpaid leave is unavailing. Pursuant to article 12.8 (a) (4) of the Authority's collective bargaining agreement with CSEA, petitioner was entitled to sick leave subject to certain conditions, including the requirement to furnish "satisfactory medical documentation". Since we do not find Supreme Court's determination to be irrational or arbitrary and capricious regarding the issue of sufficiency of petitioner's medical documentation in connection with her absence from work, there is no basis to overturn the court's ruling on this provision of the collective bargaining agreement.

Lastly, petitioner asserts that she was entitled to 12 weeks of unpaid leave pursuant to the Family and Medical Leave Act of 1993 (hereinafter FMLA; 29 USC § 2601 et seq.). The FMLA guarantees a minimum of 12 weeks of unpaid leave of absence for, inter alia, employee illness, and in the absence of statutorily prescribed notice such leave of absence would begin after an employee has exhausted his or her paid leave of absence (see, 29 CFR 825.208 [c]). Petitioner claims that she was entitled to FMLA leave after her accrued leave was exhausted, that is, beginning on December 2, 1996. The Authority argues that petitioner's FMLA leave ran concurrently with her paid leave commencing in October 1996 and that petitioner received written notification of this policy in the Authority's Employee Handbook in accordance with 29 CFR 825.208 (c). Although the parties disagree with respect to the date upon which petitioner received notice, Supreme Court resolved this factual

dispute in favor of the Authority and our review of the record reveals no reason to disturb Supreme Court's determination.

Mercure, J. P., Crew III, Peters and Carpinello, JJ., concur. Ordered that the judgment is affirmed, without costs.