◼ In the Matter of BLONDELLE JACOBSEN, Petitioner, v NEW YORK STATE DEPARTMENT OF LABOR et al., Respondents. [711 NYS2d 61] —Cardona, P. J. Proceeding pursuant to CPLR article 78 (transferred to this Court by order of the Supreme Court, entered in Albany County) to review a determination of respondent Department of Labor which terminated petitioner from her position as a senior stenographer.

On October 29, 1991, petitioner, employed as a senior stenographer with respondent Department of Labor (hereinafter respondent), sustained a work-related injury and was placed on workers' compensation leave effective October 31, 1991. Thereafter, for the next six years, petitioner was intermittently absent from work.

On October 10, 1997, petitioner's personal physician, William Mayer, certified that she was medically disabled from work. He attributed the disability to petitioner's October 29, 1991 injury. On November 12, 1997, Mayer prepared a second doctor's certification stating that petitioner could return to work on November 17, 1997 but could work only three days per week and required a day of rest between each work day. Petitioner submitted this certification on November 17, 1997 when she appeared for work but was told to go home.

Later that day, John Cody, a senior personnel administrator, wrote to the Civil Service Department Employee Health Service (hereinafter EHS) and requested that petitioner be

scheduled for a medical examination to determine if she was capable of performing the duties of her full-time position. John Hargraves performed the examination on December 2, 1997 and opined that petitioner could "physically perform the duties of [her] position" but expressed concern about the stress she was experiencing and indicated she might have "some limitations with regards to working a full-time position". Hargraves requested and petitioner agreed to a psychiatric consultation with Marcos Nieves, the EHS psychiatrist. Following a consultation on December 10, 1997, Nieves diagnosed petitioner with an "[a]djustment disorder with mixed emotional features", opined that "[s]he could benefit from referral to a psychiatrist for pharmacotherapy and individual therapy, including stress management", and concluded that she was "presently unable to return to work". Hargraves informed Cody that, based upon Nieve's evaluation and also his own, petitioner was unable to return to work. Hargraves suggested that petitioner be reevaluated in six to eight weeks.

Respondent's associate personnel administrator, Wayne Dessingue, wrote to petitioner on February 25, 1998 and advised her, *inter alia*, that pursuant to Civil Service Law § 71 and 4 NYCRR 5.9, her employment would be terminated effective March 25, 1998 due to her cumulative absences of one year. Dessingue further indicated, however, that she could apply to return to work before that date if medically fit. On March 3, 1998, petitioner, pursuant to 4 NYCRR 5.9 (d), requested to be restored to her position claiming that she was capable of performing her duties. She further requested to be seen by respondent's physicians and was examined on March 20, 1998. The EHS physician, Richard Ciulla, opined that her job was not "physical in nature and if she was so motivated and her emotional status has cleared she should be able to perform the full duties of her position". Ciulla withheld his final determination pending an assessment by Nieves. Nieves examined petitioner and found that she was "unable to return to work due to lack of improvement". He also noted that "[s]he continues to be in need of psychotherapy, and stress management, and may also need anxiety medication". Finally, he opined that petitioner's "[p]rognosis for returning to work would be better if she were transferred to another office or department". On April 1, 1998, Ciulla wrote to Cody (with a copy to petitioner) and advised him that petitioner was "unable to perform the essential duties of her position at the present time".

On April 6, 1998, Dessingue wrote to petitioner and advised

her that Nieves found her "unfit" to return to duty and, therefore, the termination effective March 25, 1998 would stand. Thereafter, petitioner requested a posttermination hearing. Following that hearing, the Hearing Officer found, *inter alia*, that petitioner had been properly terminated inasmuch as her cumulative absences due to the October 29, 1991 work-related injury exceeded 365 days. Petitioner commenced this CPLR article 78 proceeding to review respondent's determination.

Petitioner primarily contends that respondent improperly calculated the total number of cumulative absences attributable to the October 29, 1991 injury. Deborah Hughes, respondent's senior personnel administrator, testified that petitioner missed 511 days as a result of her October 29, 1991 injury.* Petitioner argues that it was error to include weekends, holidays and days she was not scheduled to work in the cumulative total.

Civil Service Law § 71 states, in relevant part, that "[w]here an employee has been separated from the service by reason of a disability resulting from occupational injury or disease as defined in the workmen's compensation law, he shall be entitled to a leave of absence for at least one year". According to the "Civil Service Attendance and Leave Manual", the calculation of the amount of leave is based on calendar days, i.e., 365 days, with extended periods of absence counted on a day-for-day basis. Paragraph 28.1 of the Attendance and Leave Manual provides that "[i]ntermittent short-term absences [like petitioner's] are counted on a day-for-day basis including all non-workdays that fall between two workday absences". We find this interpretation consistent with the "one-year" leave of absence period provided in Civil Service Law § 71 as well as the 365-day "year" of General Construction Law § 57. Petitioner's interpretation, requiring one cumulative year of "working days", would extend Civil Service Law § 71 leaves of absence beyond a 365-day year, a result not supported by the plain language of the statute. Accordingly, we find respondent's method of calculation rational and, therefore, uphold it (*cf.*, *Matter of Waite v Coombe*, 247 AD2d 663, *lv denied* 92 NY2d 802). In light of this determination, even subtracting the four days of petitioner's absence from March 12, 1993 to March 15, 1993 and her absence between November 17, 1997 and March 25, 1998, as improperly attributed to the October 29, 1991 injury, we find that the remaining number of absences due to that injury still exceed the one-year cumulative period.

---

* Hughes later admitted that she had erroneously included four days in her calculation of the 511 days.

On the other hand, it appears that petitioner may have been improperly terminated on March 25, 1998 since she did not properly receive her entitlements to additional unpaid leave pursuant to the Family and Medical Leave Act (hereinafter FMLA) (29 USC § 2601 *et seq.*). The record supports petitioner's contention that she did not receive notification from respondent that her leave accrued pursuant to the FMLA would run concurrently with her workers' compensation leave calculated for the October 29, 1991 injury under Civil Service Law § 71. We have previously noted in *Matter of McKnight v Dormitory Auth.* (267 AD2d 708, *lv denied* 94 NY2d 762) that: "The FMLA guarantees a minimum of 12 weeks [during any 12-month method period chosen by the employer in accordance with the methods set forth in 29 CFR 825.200 (b)] of unpaid leave of absence for, *inter alia*, employee illness, and, in the absence of statutorily prescribed notice such leave of absence would begin *after* an employee has exhausted his or her paid leave of absence (*see*, 29 CFR 825.208 [c])." (*Id.*, at 710 [emphasis supplied].) The FMLA did not exist before 1993 (*see*, 29 CFR 825.102 [a]) and the regulations requiring respondent to give notice to its employees of an FMLA leave designation decision did not take effect until April 6, 1995 (*see*, 60 Fed Reg 6658).

Respondent argues that notification to petitioner in its March 21, 1995 letter that her FMLA leave would run concurrently with her Civil Service Law § 71 leave constituted the prescribed statutory notice. We disagree. The March 21, 1995 letter referenced a work-related injury which occurred on February 27, 1995. It made no reference to petitioner's leave in conjunction with the October 29, 1991 work-related injury. Once respondent acquired knowledge that leave related to petitioner's October 29, 1991 injury was being taken for an FMLA-required reason and it elected to run that leave concurrently with her Civil Service Law § 71 leave, respondent was obliged to notify petitioner of that election promptly (*see*, 29 CFR 825.208 [b] [1]). In the absence of the prescribed statutory notice (*see*, 29 CFR 825.208 [b] [1]; [c]), none of petitioner's absences after April 6, 1995 should have been deducted from her FMLA leave entitlements.

Applying the above rationale, our review of petitioner's attendance record indicates that respondent may have improperly deducted days from petitioner's FMLA leave entitlements during 1995, 1996, 1997 and 1998 *before* her cumulative one-year leave under Civil Service Law § 71 was exhausted. The record does not indicate exactly when, without counting designated

FMLA leave, the 365-day cumulative leave under Civil Service Law § 71 was reached with regard to the October 29, 1991 injury. This record lacks substantial evidence supporting respondent's determination to terminate petitioner's employment effective March 25, 1998 and, therefore, must be annulled.

In view of our decision, we need not reach petitioner's remaining contentions.

Mercure, Crew III, Spain and Lahtinen, JJ., concur. Adjudged that the determination is annulled, with costs, petition granted to the extent that respondents are directed to reinstate petitioner to her former position retroactive to March 25, 1998, together with back pay and benefits, and matter remitted to respondent Department of Labor for further proceedings not inconsistent with this Court's decision.